Alan D. PIERCE, Appellee,

v.

Laura B. STALEY, Appellant.

No. 97–1302.

Supreme Court of Iowa.

Dec. 23, 1998.

---

James M. Stanton of Stanton & Sorensen, Clear Lake, for appellant.

John P. Lander of Brown, Kinsey & Funkhouser, Mason City, for appellee.

CARTER, Justice.

Defendant, Laura Staley, appeals from a judgment entered on a jury verdict in favor of plaintiff, Alan Pierce, on Pierce's claim that Staley was liable for injuries he sustained after being beaten by four men in front of Staley's home. Staley contends the district court erred by overruling her motions for directed verdict on the ground she owed no duty to Pierce to prevent the attack, having neither the ability nor the opportunity to control the assailants. After reviewing the record and considering the arguments presented, we reverse the judgment of the district court.

## I. *Scope of Review.*

Review of the trial court's denial of a motion for directed verdict is for correction of errors of law and is limited to the grounds raised in the motion. *Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 858 (Iowa 1994). This court reviews the evidence in the light most favorable to the nonmoving party and determines whether a fact question was generated. *Mensink v. American Grain*, 564 N.W.2d 376, 379 (Iowa 1997). "A directed verdict is appropriate in cases where any element of the claim is not supported by substantial evidence." *Hill v. Winnebago Indus., Inc.*, 522 N.W.2d 326, 328 (Iowa App. 1994). Whether an actionable duty is owed by a defendant to a plaintiff under a given

set of facts is also a question of law for this court. *Leonard v. State,* 491 N.W.2d 508, 509 (Iowa 1992).

## II. *Background Facts and Proceedings.*

The plaintiff, Alan Pierce, is a brother of Ronald Portis who lived next door to defendant, Laura Staley, in Mason City. During the time that Ron and his wife, Karen, lived there, they were exposed to multiple incidents of bad behavior by Staley's son, Richard, and his friends. Richard and his friends would harass Portises' children, throw garbage and fireworks on the Portises' property, and on one occasion had thrown Ron Portis to the ground and kicked him. Other assaultive conduct had occurred on Staley's property involving Richard's friends acting among themselves. On at least one occasion, a firearm was discharged on her premises.

These problems temporarily ceased when Portises complained sufficiently to Staley. Staley testified at the trial that the boys would ordinarily listen to her and respect her. She claimed that she established rules for them to follow when she was absent and that she had prohibited certain persons from coming to her home. Frequently, however, Staley told the Portises to rely on the police if trouble ensued. Karen Portis estimated that she had resorted to calling the police at least seven times prior to the incident that gives rise to the present litigation.

On July 2, 1995, the Portises left their home early in the afternoon. They were concerned about a "ruckus" that had been going on at Staley's home. They asked Pierce to stop by and check their house with an eye towards avoiding vandalism. Pierce made one visit around 4:30 p.m. and noticed no one at or around the Staley residence. He knocked on Staley's door and received no response. He then left.

Pierce made a second visit to the Portis home at approximately 6 p.m. At that time, four individuals located in the vicinity of Staley's front steps spoke to Pierce and beckoned him onto the Staley property. After Pierce had crossed the parking in front of the house and stepped onto Staley's front lawn, one of Richard's friends, Jason Hoff, engaged Pierce in a bear hug. Richard and his other friends, Roger Carson and Tim Cassidy, congregated around Hoff and Pierce near the curb in front of the house. At this time, some of the assailants retrieved baseball bats that were leaning against a car parked in the street. They used these bats to severely beat Pierce.

During both of the times that Pierce had visited the vicinity of the Portis house that afternoon, Staley was assisting her boyfriend in performing some yard work in Garner, approximately twenty miles from Mason City. At around 4 p.m. that afternoon, Staley had received a phone call from her son, Richard. Richard did not testify, and Staley's disclosure of the details of the conversation was extremely limited. She only stated that Richard had told her about an incident that had occurred involving three men coming to the door with baseball bats. Staley acknowledged some urgency to return home upon receiving that news and indicated that she began to shower and clean up with that purpose in mind. She did not actually return home, however, until approximately 6:30 p.m., which was fifteen minutes after the attack on Pierce.

Pierce commenced the present action, seeking to recover from Staley for his injuries under the theory that she was responsible for controlling third persons on her property. The district court submitted the case to the jury, which returned a verdict in favor of the plaintiff.

## III. *Preservation of Error.*

Pierce complains that Staley's brief does not comply with Iowa Rule of Appellate Procedure 14(a) by failing to set forth appropriate assignments of error. When a party, in an appellate brief, fails to state, argue, or cite authority in support of an issue, the issue may be deemed waived. Iowa R.App. P. 14(a)(3); *Hollingsworth v. Schminkey,* 553 N.W.2d 591, 596 (Iowa 1996).

Staley presents a single "Issue Presented for Review" in her brief, in which she asserts she had no duty to prevent Pierce's injuries, having neither the ability nor the opportunity to control the conduct of the assailants. In framing her issue, Staley does not specifical-

ly contend that her absence from the scene of the assault entitled her to a directed verdict. *See* Restatement (Second) of Torts § 318 (1965). Nevertheless, we find this issue is raised by her assertion that she had neither the ability nor the opportunity to control the assailants. She clearly argues the issue of "presence" in the body of her brief, and this was one of the grounds she raised in her motions for directed verdict. Although less clear, we also construe Staley's issue and supporting arguments concerning foreseeability as challenging the sufficiency of evidence on the other Restatement elements discussed below. Pierce has been able to respond to these arguments and has suffered no prejudice.

## IV. *The Motion for Directed Verdict.*

■ Generally, a person does not have a duty to aid or protect another, or to control the conduct of a third person to prevent that person from causing physical harm to another. *Morgan v. Perlowski,* 508 N.W.2d 724, 726 (Iowa 1993). There are exceptions to this general rule, however. *See* Restatement (Second) of Torts §§ 315–320; *Leonard,* 491 N.W.2d at 510–12. We recently recognized one such exception, based on section 318 of the Restatement (Second) of Torts, in *Morgan v. Perlowski.* It is under this exception that Pierce brought suit.

Section 318 provides as follows:

Duty of Possessor of Land or Chattels to Control Conduct of Licensee

If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, *if present,* under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control.

(Emphasis added.) In *Morgan* the plaintiff was injured when he attempted to break up a fight at a beer party hosted by the defendant. The plaintiff was assaulted by one of several uninvited guests who had been causing trouble at the party. The plaintiff's suit against the defendant was premised on the duty outlined in section 318. We upheld a plaintiff's verdict and affirmed the district court's denial of the defendant's motions for directed verdict. In adopting the principles of section ·318, we said, "[a]s a matter of public policy, it is reasonable to impose a limited duty upon a possessor of land, who is present on the land, to control the conduct of social guests." *Morgan,* 508 N.W.2d at 728.

■ The quoted language reflects the requirement, found in the text of Restatement section 318, that the possessor be *present* on the land before the duty is imposed. Staley correctly argues that she was entitled to a directed verdict if her presence on the property is an element of the tort, since it is undisputed that she was absent when the beating occurred. Pierce concedes as much and accordingly argues that a possessor's presence should not be considered an element of the tort.

In *Morgan* we were not confronted with deciding whether a possessor's "presence" is a necessary predicate to the duty we recognized. The defendant in that case was on the property when the assault occurred. We thus had no occasion to consider the matter. In considering the issue now, we observe that section 318 contains the following caveat:

The Institute expresses no opinion as to whether there may not be a duty of reasonable care to control the conduct of the third person

(1) where the third person is a trespasser; or

(2) *where the actor, although not present, is in the vicinity, is informed of the necessity and opportunity of exercising such control, and can easily do so.*

(Emphasis added.) Relying on the second caveat, the district court concluded that Staley's presence was not a prerequisite to liability. The appellee urges that this was a proper view of the duties of a possessor of real estate because the evidence established

sufficient knowledge on Staley's part of the necessity to control Pierce's assailants and also shows that she could easily have done so.

We are unaware of any jurisdictions that have adopted or rejected this portion of the caveat to section 318, and Pierce has failed to cite any case addressing the issue. The Restatement editors made the following observation:

> No cases have been found bearing upon the second part of the Caveat. Since the basis of the liability is the possessor's responsibility for what is done upon his land, together with his opportunity for exercising control, it would appear that the same rule would be applied where he is not present, but is notified and is in a position to arrive promptly upon the scene.

Restatement (Second) of Torts § 318 note (1966).

The evidence concerning whether Staley was informed of the necessity of immediately returning home is extremely limited. The most that appears is that she received a phone call from her son approximately two hours before Pierce was attacked and that during the conversation her son had advised her that three men had come to the door with baseball bats and had caused some sort of trouble that was not described.

 There was nothing in what was disclosed concerning the telephone conversation to indicate that the three persons with baseball bats were present on the property with the consent of Staley's son Richard. Indeed, the context within which their presence was described indicated that they were not. This is important because the duty to control third persons under section 318 of the Restatement is directed at those coming on the property with consent. More significantly, the manner in which the incident was disclosed to Staley suggested that the entry of the persons with baseball bats upon her property was in the past tense and whatever disturbance this may have caused was not a continuing disturbance.

We believe that under an objective standard the information conveyed to Staley in the telephone conversation did not suggest the necessity of immediate action to quell a disturbance. Whatever Staley's subjective belief was concerning the necessity to return to her home, it is causally determinative only with respect to what her duty might be to quell some disturbance that occurred two hours prior to the attack on Pierce. Because we find that the information imparted to Staley did not sufficiently show the necessity of quelling the conduct on which Pierce's action is based, we believe that Pierce failed to establish an actionable claim even if the second caveat to section 318 requires a possessor to control third persons in some instances in which the possessor is not present. Because we conclude that the defendant's motion for directed verdict should have been sustained, we need not consider the issues presented with respect to the jury instructions.

We have considered the issues presented and conclude that the judgment of the district court should be reversed. On receipt of the procedendo, the action should be dismissed by the district court.

**REVERSED.**